J-A23027-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL S. BERRY, JR. | : | |
| | : | |
| Appellant | : | No. 1206 WDA 2017 |

Appeal from the Judgment of Sentence April 13, 2017
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  CP-30-CR-0000155-2016

BEFORE:  BOWES, J., SHOGAN, J., and STABILE, J.

MEMORANDUM BY SHOGAN, J.:                    FILED DECEMBER 04, 2018

Appellant, Michael S. Berry, Jr., appeals from the judgment of sentence

entered on April 13, 2017.[1]  We affirm.

The trial court summarized the facts of the case in its opinion denying

Appellant's post-sentence motion as follows:

> [T]he Commonwealth indicated that [Appellant] and two (2) co-workers[3], all joined at the above number and term, while employed as Corrections Officers at SCI Greene, a maximum security facility, engaged in a practice of transferring property to inmates in an unauthorized and illegal manner.  The Commonwealth also charged and the jury convicted [Appellant] of the crime [r]ecklessly [e]ndangering another person as a result of conduct which permitted the transfer of a homemade knife from

---

[1]  Appellant mistakenly characterized the judgment of sentence as entered on April 17, 2017, the date it was docketed in the common pleas court.  However, the imposition date of a judgment of sentence is the date it is pronounced in open court, not the date it is docketed.  Commonwealth v. Duffy, 143 A.3d 940 (Pa. Super. 2016); Commonwealth v. Green, 862 A.2d 613 (Pa. Super. 2004).  Appellant's judgment of sentence was pronounced on April 13, 2017.

one inmate to another. This [was] as a result of a meeting arranged by [Appellant].

³ [T]he Co-Defendants were acquitted of all charges.

The [c]ourt heard various testimony regarding the practice of confiscating and awarding property to inmates. A fair reading of the evidence showed that there existed an institutional practice of recovering and storing confiscated property (primarily electronic related property) from the "HOT TRASH."[2] Correctional Officers or their supervisors would then engage in allowing the transfer of property in exchange for giving of information by inmates.

An engraving machine was used to mark the property as belonging to the inmate to which the property was transferred. It should be noted that each of the Co-Defendants were members of

_____

[2] Robert D. Gilmore, the Superintendent of SCI Greene, described "hot trash" as inmates' property that is discarded, confiscated, or not wanted. N.T., 1/24/17, at 52–53; N.T., 1/25/17, at 49. The property is placed in a bin labeled "hot trash." Id. The bins are located in two places, the "receiving and discharge area" and the security area that is "inside the fences of the institution." Id. at 53, 81. Superintendent Gilmore testified that if property is in the hot trash bin, it is considered the property of the institution. Id. Hot trash is stored within the state correctional institution until "it's taken outside of the facility," where it then is placed into a special dumpster with a lock until it is "picked up by a vendor and is destroyed." Id. at 55, 106. Lieutenant Stephen Silbaugh, security lieutenant at SCI Greene, labeled hot trash as "our most sensitive property in the security department" and made clear that inmates "absolutely" are not to have access to hot trash, and they are not to be "around it, near it, push it [in a cart, or] touch it. . . ." Id. at 163, 166–167. Similarly, correctional officers are not "permitted to go through the hot trash and take property out of that receptacle." Id. at 166. Lieutenant Silbaugh also described the procedure when property initially is confiscated, explaining that it first is held in the security department's property cage. Id. at 184. A determination is made whether the property is unserviceable and whether it "serves no other purpose for the institution, that there is no legitimate intrinsic value for us to retain it." Id. at 185. In that situation, the property is put in the hot trash. Id.

the "search team."[3]  There was testimony that a meeting was held regarding this procedure/practice and that a directive was issued that this practice would no longer be permitted.  This specific meeting was testified to as being held on September 24, 2014.

Post Sentence Motion Opinion and Order, 7/20/17, at unnumbered 3.

Following a four-day trial, a jury convicted Appellant of two counts of unlawful use of computer and other computer crimes, 18 Pa.C.S. § 7611(a)(2), and one count of recklessly endangering another person

_____

[3]  Lieutenant Silbaugh, Appellant's immediate supervisor, supervised the search team.  N.T., 1/24/17, at 121.  Correction officers can bid for the search team, and bids are "governed by time and service."  Id. at 122; N.T., 1/25/17, at 69.  Duties of team members included "individual responsibilities to conduct cell searches, . . . person searches of inmates, [and] assist and participate in investigations."  Id. at 122.  Search team members also have specific orders "to properly log and submit any and all documents necessary. . . ."  Id. at 123.  Lieutenant Silbaugh explained that search team members bear the responsibility to:

> conduct specific cell searches, to identify a specific inmate and go and search that inmate's property.  And you're searching for contraband, you're searching for compliance, you're looking at that individual's property to see if he is in compliance.  You want to look at his electronic items to see if they were tampered with, or are actually registered to him.  You want to look at the amount of property he has in his cell.  An inmate that has too much property in his cell is probably too affluent.  There is a reason that an inmate has too much property, because property equates to money, money equates to power.

N.T., 1/24/17, at 129–130.  Captain Dave Mitchell, a former search team supervisor, testified similarly.  N.T., 1/25/17, at 25–37.

("REAP"), 18 Pa.C.S. § 2705.[4]  The trial court ordered a presentence investigation report ("PSI") and sentenced Appellant on April 13, 2017, "to a total Sentence of not less than 30 days nor more than 1 year followed by 2 years of Probation and [Appellant] was granted the privilege of work release." Post Sentence Motion Opinion and Order, 7/20/17, at unnumbered 2.

Appellant filed a timely post-sentence motion, which the trial court denied on July 20, 2017.  Appellant then filed a timely notice of appeal; both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two questions on appeal:

1.  Was the evidence sufficient to convict the accused of recklessly endangering another person?

2.  Was the evidence sufficient to convict the accused of [u]nlawful use of computer and other computer crimes[?]

Appellant's Brief at 24.

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt.  Commonwealth v. Von Evans, 163 A.3d 980, 983 (Pa. Super.

_____

[4]  Appellant was acquitted of tampering with records or identification and conspiracy to commit obstructing administration of law or other government function.  In addition, the trial court granted a directed verdict or otherwise dismissed the charge of conspiracy to commit criminal mischief.  Post Sentence Motion Opinion and Order, 7/20/17, at unnumbered 1 n.1.

2017). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." Commonwealth v. Williams, 176 A.3d 298,306 (Pa. Super. 2017). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. Commonwealth v. Palmer, 192 A.3d 85, 89 (Pa. Super. 2018). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Commonwealth v. Enix, 192 A.3d 78, 81 (Pa. Super. 2018). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Commonwealth v. Rogal, 120 A.3d 994 (Pa. Super. 2015).

Appellant's first issue[5] assails his conviction of REAP, which provides: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. The degree of culpability required is recklessness, defined in 18 Pa.C.S. § 302, as follows:

(b) Kinds of culpability defined.--

_____

[5] We note that in Appellant's first issue, Appellant wholly failed to refer to the notes of testimony. Appellant's Brief at 35–42. Indeed, with transcripts containing nearly 900 pages, Appellant did not cite to the notes of testimony in his first issue one time. Id. This dereliction and non-compliance with the rules of appellate procedure forced this Court to scour the record simply to explain aspects of the procedural and factual history because Appellant failed adequately to do so. See Commonwealth v. Samuel, 102 A.3d 1001, 1005 (Pa. Super. 2014) ("It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim.").

* * *

> (3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S § 302(b)(3); Appellant's Brief at 36–37. "Recklessly endangering another person is a crime 'directed against reckless conduct entailing a serious risk to life or limb out of proportion to any utility the conduct might have.'" Commonwealth v. Vogelsong, 90 A.3d 717, 719 (Pa. Super. 2014) (citing Commonwealth v. Rivera, 503 A.2d 11 (Pa. Super. 1985) (en banc)). Thus, to support a conviction, the evidence must establish that the defendant acted recklessly in a manner that endangered another person. 18 Pa.C.S. § 2705. A person acts in a reckless manner when he consciously disregards a substantial and unjustifiable risk. 18 Pa.C.S. § 302(b)(3).

Appellant contends that the Commonwealth did not prove beyond a reasonable doubt that Appellant consciously disregarded a substantial and unjustifiable risk. Appellant's Brief at 37. Appellant suggests that while he may have exhibited poor judgment, enough to suffer employee discipline, he did not exhibit the necessary conscious disregard of risk. Id. (citing Commonwealth v. Hutchins, 42 A.3d 302 (Pa. Super. 2012)). Rather, Appellant maintains that he merely "may not have performed according to the best practices of the institution." Appellant's Brief at 38. He avers that there

- 6 -

was no "showing" that any one person was in fact endangered. Id. at 39. Appellant acknowledges that while it is illegal for an inmate to possess a shiv in a correctional institution, this violation of the contraband rule "does not mean the mere possession of the shiv constitutes [REAP]." Id. at 40.

For support, Appellant relies on Commonwealth v. Kamenar, 516 A.2d 770 (Pa. Super. 1986). In that case, there was a dearth of evidence that the defendant's single discharge of a weapon out of the back window of her home into a hillside placed or may have placed any other person in danger of death or serious bodily injury; therefore, this Court determined the defendant's actions did not constitute REAP. Appellant also references Commonwealth v. Recchiuti, 2006 Pa. Dist. & Cnty. Dec. LEXIS 235 (Pa. County Ct. Sept. 8, 2006),[6] where the common pleas court determined that the defendant's actions of hitting his wife with a chair, resulting in her requiring six stitches, did not constitute REAP. Neither case is determinative of the issue before us.

Lieutenant Silbaugh explained that search team members do not have authority to violate prison policy by allowing inmates to exchange property,

---

[6] We note that decisions from the courts of common pleas are not binding on the Superior Court. Barren v. Commonwealth, 74 A.3d 250, 254 n.2 (Pa. Super. 2013) (citing Commonwealth v. Palm, 903 A.2d 1244, 1247 n.3 (Pa. Super. 2006)).

and permitting same while in the strip room[7] violated prison policy. N.T., 1/24/17, at 130, 134. Lieutenant Silbaugh had the opportunity to review video evidence gathered due to suspicion that Appellant exhibited unauthorized behavior resulting in the filing of the instant charges against him. Id. at 136. Lieutenant Silbaugh observed:

> several things that were not only unusual, but were clearly prohibited. The presence of inmates in what would be a restricted portion of the visiting room behind the counter, that was not only a violation of policy, extremely unusual for inmates to be in that area, that's a staff only area. The free flowing exchange of the property between the inmates that were there, that was highly unusual and would clearly violate policy.
>
> * * *
>
> It appeared as if the [electronic] items were being transferred from one inmate to another, an exchange of paperwork was completed, and the inmate who brought the property to the room was not being—left the room with that property, he had left with another inmate.

Id. at 136–137.

_____

[7] Lieutenant Silbaugh testified that SCI Greene had a visiting strip room used:

> to speak with inmates confidentially, we use it to return property that we have confiscated from inmates during our searches and seizure process, we use it to—for a number of purposes, but for a [correction officer] to use it, it should be with the supervision and the direction of a manager.

N.T., 1/24/17, at 132. Lieutenant Silbaugh testified that when speaking to an inmate in the strip room, there should be at least two staff members "and perhaps even the supervising lieutenant." Id. at 133. Rarely would a second inmate be present because it "would disrupt the balance . . . That's not a scenario that's conducive to a safe environment." Id. at 134.

Captain Dave Mitchell was in charge of the security department at SCI Greene and supervised Appellant, as part of the search team, for fourteen months. N.T., 1/25/17, at 24–25. Captain Mitchell described calling a search team meeting on September 24, 2014, at which Appellant was present. Id. at 37–42. One of the topics that day was to inform Appellant and others that Dan Burns, a regional deputy, had reported that officers were trading property for intelligence, and such action must immediately cease. Id. at 41. Captain Mitchell also testified that there were reports that drugs were coming into SCI Greene. Id. at 51. In particular, Captain Mitchell received information from an inmate that Appellant was bringing drugs into the prison. Id. at 65–67, 82; N.T., 1/26/17, at 7. For that reason, covert cameras were installed in the visiting strip room by the Office of Special Investigations and Intelligence ("OSII") of the Department of Corrections. Id. at 51–52, 172; N.T., 1/24/17, at 110; N.T., 1/26/17, at 7.

Officer Raymond Heinle testified that he installed three cameras in the visiting strip room and explained:

> They were an inch by inch box type camera that can be placed in small holes. . . . I would poke a hole through the false ceiling, place the camera on top where I could look down at a certain area of the room. I had even smaller ones, probably about as big as your thumb nail, I would place them in already existing holes of these tiles facing different directions inside that room.

N.T., 1/25/17, at 188–191. Officer Heinle was able to view the footage while the cameras were filming, and he acquired video footage in the strip room from January 23, 2015, to February 3, 2015. Id. at 191, 206. Officer Heinle

observed Appellant with three inmates in the visiting strip room exchange a "laundry bag of commissary, which would be food items." Id. at 193. One of the inmates brought it into the room, they shook hands, exchanged the bag, and then left. Id. at 194. Appellant did not search the bag. Id. When the inmates left the room, Officer Heinle stopped the inmate with the laundry bag, confiscated it, and searched the inmate. Id. at 196. The laundry bag contained a can of coffee in which was concealed a make-shift weapon known as a shank. Id. The shank was confiscated as evidence, and the inmate was removed to the restricted housing unit. Id. at 197. Officer Heinle testified that Appellant's failure to search the laundry bag, thereby allowing an inmate to retain possession of the shank, placed "[t]he whole institution" in danger. Id. at 201. The video of this exchange was played for the jury. N.T., 1/26/17, at 39–40.

Department of Corrections ("DOC") Police Officer Daniel E. Meinert, the supervisory agent of OSII, testified that he is responsible for evaluating criminal activity on DOC property, including "inmate crimes, officer crimes, employee crimes, contractor crimes, [and] and fraud against the department . . . ." N.T., 1/26/17, at 4–5. Officer Meinert and forensic analyst Christina Hingston analyzed the surveillance footage. Id. at 9.

In addressing the sufficiency of the evidence to support the REAP conviction, the trial court stated as follows:

> The circumstances were such that two inmates were brought, at the request of [Appellant], to the visiting strip room

which is normally not authorized for inmate use and that in a dimly lit room and while recorded, a laundry bag brought in by one inmate was then taken by another inmate. This bag contained a homemade weapon and was exchanged in the context of a meeting of inmates arranged by [Appellant]. The [c]ourt believes that under these particular circumstances the Recklessly Endangering charge was wholly warranted.

The [c]ourt believes that under these circumstances that the failure to search was reckless and was a substantial disregard for a known risk.

The [c]ourt is not swayed by the argument of the Defense that a weapon which was already in the institution, but then transferred to another inmate, did not make the prison any more or less dangerous.

The [c]ourt though did deem the failure to search where a weapon was ultimately discovered to be a serious offense and reckless conduct on the part of [Appellant], particularly given the fact that the homemade "shank" was found immediately after the inmate exchange.

Post Sentence Motion Opinion and Order, 7/20/17, at unnumbered 13–14.

We agree with the trial court that Appellant acted recklessly in failing to examine the contents of the laundry bag containing the shank that was exchanged by two inmates, and that such failure may have placed another person in danger of death or serious bodily injury. Appellant's claim that there was no showing that any one person was in fact endangered, Appellant's Brief at 39, is of no moment because the statute does not require it. 18 Pa.C.S. § 2705 ("A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.") (emphasis added). As established by the testimony presented at trial, Appellant knew, as did all corrections

officers, especially those officers on the search team, that multiple inmates were not permitted in the strip room, inmates were not permitted to transfer property to another inmate, all bags must be examined by an officer, and that possession of a shank, or any item that can be used as a weapon, places all officers and all inmates at risk. We agree that the Commonwealth presented sufficient evidence of REAP.

In his second issue, Appellant argues there was insufficient evidence to convict him of unlawful use of computer and other computer crimes, 18 Pa.C.S. § 7611(a). The statute provides as follows:

(a) Offense defined.--A person commits the offense of unlawful use of a computer if he:

(1) accesses or exceeds authorization to access, alters, damages or destroys any computer, computer system, computer network, computer software, computer program, computer database, World Wide Web site or telecommunication device or any part thereof with the intent to interrupt the normal functioning of a person or to devise or execute any scheme or artifice to defraud or deceive or control property or services by means of false or fraudulent pretenses, representations or promises;

(2) intentionally and without authorization accesses or exceeds authorization to access, alters, interferes with the operation of, damages or destroys any computer, computer system, computer network, computer software, computer program, computer database, World Wide Web site or telecommunication device or any part thereof;

(3) intentionally or knowingly and without authorization gives or publishes a password, identifying code, personal identification number or other confidential information about a computer,

> computer system, computer network, computer database, World Wide Web site or telecommunication device.

Appellant suggests that the Information alleged only that Appellant accessed the computer data base without authorization, and he contends, "Although the introductory paragraph of the Information quotes Section 7611(a)(2), the 'to wit' clause appears to be an allegation of a crime under Section 7611(a)(1)."[8]  Appellant's Brief at 45.  "[The Information] did not allege that [Appellant] exceeded his authorization to access.  He did not enter any folders, files, software, or system parts that were beyond what his issued IT staff Department of Corrections password allowed."  Id. (emphasis omitted).   Appellant thus avers:  that he was authorized to access the computer system and had his own password for that purpose; there is nothing in the record to show that Appellant did anything to exceed his authority to access a level where he was not permitted; and there was no evidence presented that Appellant used a computer, its systems, or database "to actually look up inmate numbers to facilitate the scheme of unauthorized sale or transfer of property."  Appellant's Brief at 47–48 (emphasis omitted).  In

_____

[8]  The trial court instructed the jury, inter alia, that to find Appellant guilty of 18 Pa.C.S. § 7611 it must find that Appellant "accessed or exceeded authorization to access all or any part of any computer or computer system . . . to look up inmate numbers to facilitate the scheme of unauthorized . . . transfer of property."  N.T., 1/27/17, at 123.  Appellant does not assert that the trial court improperly or incorrectly charged the jury.

essence, Appellant's argument is that because there was no testimony or video evidence presented that Appellant exceeded his authorization to access the computer system, there was insufficient evidence that he committed unlawful use of the DOC computer. Appellant's Brief at 48.[9]

In making his argument on this issue, Appellant emphasizes the language in 18 Pa.C.S. § 7611(a) that states a person commits the offense if he "exceeds authorization" to access any computer or computer system. Appellant's Brief at 43. He ignores, however, that the statute also states in the disjunctive that a person commits the crime if he "accesses" such computer system. 18 Pa.C.S. § 7611(a)(1). While Appellant may not have exceeded the level of access to the prison's database, ample testimony established that his authorization to do so did not include allowing inmates to view the database.

SCI Greene Superintendent Gilmore testified at length regarding the extent of Appellant's authorization, as a corrections officer, regarding the prison's computer network. N.T., 1/24/17, at 57–66, 74–76, 92–93. Lieutenant Silbaugh testified that permitting inmates to "see the computer screen not for inmate use" is a violation of prison policy. Id. at 138. The lieutenant also testified to the warning that appeared on all computer screens that stated use of the computer "is an activity . . . for authorized use only.

_____

[9] We note that the trial court failed to address this issue specifically, and the Commonwealth's responsive brief merely is conclusory on this issue.

Unauthorized access is prohibited." Id. at 168. Lieutenant Silbaugh confirmed that he did not authorize Appellant to "look up confidential information pertaining to inmates" on the computer system. Id. at 169.

While displaying the video shown to the jury, Officer Meinert testified that it showed Appellant logging on to the restricted computer in the strip room on January 29, 2015. N.T., 1/26/18, at 20. Two inmates entered the strip room, and one inmate pointed to the computer screen where his financial records appeared. Id. at 22. The second inmate began to view the computer screen as well for several minutes. Id. at 23. A third inmate then entered the strip room. Id.

Video from February 3, 2015, once again showed Appellant at the computer whereupon two inmates entered the strip room. N.T., 1/26/18, at 40. One of the inmates leaned over to observe the computer screen while speaking to Appellant. Id. Officer Meinert's report indicated that Appellant admitted to allowing inmates' presence and access to the computer in the strip room without authorization. Id. at 43–44.

The extensive testimony established that Appellant accessed information on the prison computer system and utilized the SCI Greene database and its confidential information for a purpose for which he was not authorized. 18 Pa.C.S. § 7611(a). This case is substantially similar to Commonwealth v. McFadden, 850 A.2d 1290 (Pa. Super. 2004), where a

police officer assailed her conviction of unlawful use of a computer.[10] There, this Court observed that while the officer was authorized to access her police computer system "for purposes of official police business, she was not authorized to access the computer for any other purposes." Id. at 1293. We concluded the appellant's use of the computer to send an email suggesting her police vehicle was contaminated by anthrax was not an authorized use. Id. We found such evidence to be sufficient to support her conviction of unauthorized use of a computer. Similarly, herein, Appellant's use of the computer to view inmate records and to permit inmates to view such records, of their own or belonging to other inmates, constituted a use of SCI Greene's computer system for which Appellant was not authorized. Thus, we reject Appellant's second issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/2018

_____

[10] The appellant in McFadden was convicted of 18 Pa.C.S. § 3933, unlawful use of a computer, which was repealed by 2002, Dec. 16, P.L.1953, No. 226, § 12, and replaced by 18 Pa.C.S. § 7611.