**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Corey Adam HUTCHINS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 25, 2011.

Filed Feb. 27, 2012.

---

David M. Hoover, Harrisburg, for appellant.

Pier N. Hess, Assistant District Attorney, Lebanon, for Commonwealth, appellee.

BEFORE: DONOHUE, OLSON and STRASSBURGER*, JJ.

OPINION BY OLSON, J.:

Appellant, Corey Adam Hutchins, appeals from the judgment of sentence entered on October 13, 2010, made final by the denial of his post-sentence motion, sentencing him to an aggregate of one month to two years' incarceration, plus restitution, fines, and other conditions, for convictions on two counts of driving under the influence of a controlled substance,[1] four counts of recklessly endangering another person,[2] and one count of possession of a small amount of marijuana—personal use.[3] We affirm in part, reverse in part, and remand for re-sentencing.

The trial court thoroughly set forth the factual and procedural background of this matter as follows:

On September 19, 2009, at approximately 4[:00] p.m., Christopher White was traveling eastbound on Jonestown Road, a two-lane road, when Appellant's car, a 1999 Dodge Stratus turned in front of his vehicle. [Appellant was driving his car. His three young daughters were also in the vehicle.] Appellant's vehicle was making a left turn in front of White's vehicle on Old Jonestown Road. White testified that at this particular section of Old Jonestown Road there are no hills or slopes in the road. Rather, the location where the accident occurred was flat. On the date in question, there were no adverse weather conditions, such as rain or sleet, and there were no problems with lighting because it was a sunny day. White was traveling approximately forty-five (45) miles per hour, the posted speed

limit, before the accident occurred. The force of impact was enough to deploy the airbags in his vehicle, and White's car was totaled.

Trooper David Mays was dispatched to assist with the accident. Trooper Mays testified that he arrived at the scene in a matter of a couple of minutes. Upon arriving at the scene, Trooper Mays observed a two-car crash along the roadway. Without speaking to [either] of the drivers, Trooper Mays searched both vehicles. Both vehicles were red Dodge Stratuses. As Trooper Mays searched Appellant's vehicle for registration and insurance information, he smelled an odor of [ ] marijuana. He found a Camel cigarette case in the left driver's side door pocket that contained marijuana.

The Commonwealth also presented testimony of Trooper Nathan Trate. He testified that he arrived on the scene of the accident at approximately 4:20 p.m. He confirmed White's testimony that it was sunny with no adverse conditions and that the crash occurred in a relatively flat area. In addition, Trooper Trate revealed both vehicles had severe front-end damage and the glass in Appellant's vehicle had shattered inward. At the scene, Appellant admitted that the accident was his fault because he was "distracted" and thought that he could make the turn. Trooper Trate testified that Appellant's demeanor was "unusually calm" or "flat line" after the accident. After being asked whether he had consumed alcohol, Appellant stated that he had not, but he admitted to smoking marijuana earlier in the day.

---

* Retired Senior Judge assigned to the Superior Court

1. 75 Pa.C.S.A. § 3802(d)(1)(i) and 75 Pa. C.S.A. § 3802(d)(2).

2. 18 Pa.C.S.A. § 2705.

3. 35 Pa.S.A. § 780–113(a)(31).

Trooper Trate testified that the prime factor in his assessment of the head-on collision was that the Appellant was distracted and "could be driving under the influence." Trooper Trate arrived at this factor because the accident occurred on a straight roadway when the surface was dry, no blame was assessed to the other driver and the weather conditions were sunny and clear. Trooper Trate stated that the Appellant never presented him with prescriptions or any type of medications that he consumed that day. Trooper Trate believed that in his opinion, based on his experience and training, the Appellant was under the influence of marijuana and that this had an impairing effect on his ability to drive. To come to that conclusion, Trooper Trate considered Appellant's "unusually calm" demeanor after the accident; furthermore, he did not see another reason why the Appellant would turn in front of a car on a straight roadway. Trooper Trate also noted that the Appellant's pupils seemed "constricted" and considered Appellant's statement that "he had a lot of things on his mind" before the accident.

In addition, Trooper Trate explained that the effects of marijuana on the body include a "lack of depth perception, fatigue [and an] inability to concentrate." Furthermore, he revealed that marijuana is a depressant which slows the body down, including one's reaction time.[ ] No standard field sobriety tests were performed because Appellant left the scene to accompany his daughters to the hospital before Trooper Trate was able to conduct the tests. At the hospital, Trooper Trate placed Appellant under arrest. The Appellant then admitted to smoking a half of a bowl [of marijuana] hours earlier in the day.

The parties stipulated that the substance found in Appellant's car was determined to be marijuana. The substance was forwarded to the Pennsylvania State Police Crime Laboratory where the items were analyzed by Forensic Scientist Robert Wagner. Wagner determined that the weight of the matter was .63 grams of marijuana, a Schedule I controlled substance.

Appellant consented to a blood draw. The toxicology report prepared by Good Samaritan Hospital indicated that Appellant had no alcohol in his blood. The Appellant's blood sample contained 43ng/ml of carboxy acid [a metabolite of the marijuana plant].[ ]

\*   \*   \*

[The Commonwealth presented several witnesses regarding the chain of custody over and testing of Appellant's blood sample. The last of those witnesses was Leslie Edinboro, Ph.D.] Dr. Edinboro testified as to the differences between whole blood and serum [testing]; specifically that whole blood is "blood from which none of the elements are removed and serum is a substance from which some elements of the blood are removed." Dr. Edinboro stated that Quest[, the lab used in this matter,] uses "whole blood" to analyze a substance for controlled substance. However, Dr. Edinboro also revealed that serum is used synonymously with blood, whole blood and plasma. Dr. Edinboro went on to state that in the process of preparing samples for analysis, numerous things are added to the whole blood samples. Proteins in the blood then "clump up" or "curdle" in the blood and fall to the bottom of the tube. Dr. Edinboro testified that these proteins are removed from the blood in order to conduct the tests. An extract of the supernatant is what makes it to the instrument for

analysis. The Appellant did not present the testimony of any witnesses.

Trial Court Opinion, 3/4/2011, at 4–8.

On September 14, 2010, a jury convicted Appellant of the aforementioned crimes. On October 13, 2010, the trial court sentenced Appellant. That same day, Appellant filed a post-sentence motion, which the trial court eventually denied. This appeal followed.[4]

> Appellant raises three issues on appeal: Did the trial court err in denying Appellant's motion for judgment of acquittal as to count two—[Driving Under the Influence] DUI: controlled substance—impaired ability 75 Pa.C.S.A. § 3802(d)(2) where the Commonwealth's evidence failed to establish that Appellant was under the influence of marijuana to a degree which impaired his ability to safely operate a motor vehicle?

> Did the trial court err in denying Appellant's motion for judgment of acquittal as to both DUI offenses where the Commonwealth failed to introduce the presence of controlled substance or its metabolites in a whole blood result?

> Did the trial court err in denying Appellant's motion for judgment of acquittal as it related to the counts of recklessly endangering another person where the Commonwealth's evidence failed to show impairment by a controlled substance?

Appellant's Brief at 6.

All three of Appellant's issues challenge the sufficiency of the evidence for particular convictions. In *Commonwealth v. Hennigan*, 753 A.2d 245 (Pa.Super.2000), our Court set forth the applicable standard for assessing a challenge to the sufficiency of the evidence:

"The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Heberling*, [451 Pa.Super. 119] 678 A.2d 794, 795 (Pa.Super.1996) (*citing Commonwealth v. Williams*, [539 Pa. 61] 650 A.2d 420 (Pa.1994)). In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Commonwealth v. Cassidy*, [447 Pa.Super. 192] 668 A.2d 1143, 1144 (Pa.Super.1995) (citations omitted). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Valette*, [531 Pa. 384] 613 A.2d 548, 549 (Pa.1992) (citations and quotation marks omitted).

---

4. We note that the trial court did not require Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

The trial court issued a Rule 1925 opinion on March 4, 2011. Therefore, the requirements of Rule 1925 have been satisfied in this matter.

*Commonwealth v. Vetrini,* 734 A.2d 404, 406–407 (Pa.Super.1999).

*Hennigan,* 753 A.2d at 253 (parallel citations omitted).

■ Appellant's first issue challenges the sufficiency of the evidence for his conviction under 75 Pa.C.S.A. § 3802(d)(2). Pursuant to that statute:

> (d) Controlled substances—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
>       *     *     *
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2). We have emphasized that "Section 3802(d)(2) does *not* require that any amount or specific quantity of the drug be proven in order to successfully prosecute under that section." *Commonwealth v. Williamson,* 962 A.2d 1200, 1204 (Pa.Super.2008) (emphasis in original). Rather, the Commonwealth must simply prove that, while driving or operating a vehicle, the accused was under the influence of a drug to a degree that impaired his or her ability to safely drive that vehicle. *Id.*

In this matter, Appellant argues that the Commonwealth failed to present sufficient evidence that the car accident, while Appellant's fault, was caused by Appellant's impairment resulting from marijuana use. Much of Appellant's argument in this regard focuses on whether expert testimony was necessary to explain to the jury the significance of Appellant's blood test result. Appellant's Brief at 11–15. In support of that argument, Appellant relies upon our holding in *Commonwealth v. Etchison,* 916 A.2d 1169 (Pa.Super.2007), for the proposition that the Commonwealth must present expert testimony to establish the fact that a defendant's ability to safely operate a motor vehicle was impaired by ingestion of a controlled substance that produced metabolites such as those found in Appellant's system. Appellant's Brief at 11 (emphasis added).[5] Therefore, Appellant argues, because the Commonwealth did not produce expert testimony, the evidence presented by the Commonwealth was *per se* insufficient to support a conviction under Subsection 3802(d)(2). *Id.*

■ Our holding in *Etchison,* however, was recently distinguished by our Supreme Court's decision in *Commonwealth v. Griffith,* —— Pa. ——, 32 A.3d 1231 (2011). In *Griffith,* the Supreme Court declined to "read into subsection 3802(d)(2) a mandatory requirement for expert testimony to establish that the defendant's ability to drive safely was caused by ingestion of a drug." *Id.* at 1238. The High Court explained that it "did not dispute that in some cases, depending on the specific facts and circumstances, expert testimony may be helpful, or perhaps even necessary to prove causation under subsection 3802(d)(2)," but it declined to hold that the need for expert testimony is mandatory in all cases. *Id.* Consequently, given the Supreme Court's holding in *Griffith,* Appellant's argument that the absence of expert testimony, alone, established that the Commonwealth failed to present suffi-

---

5. As this Court noted in *Commonwealth v. DiPanfilo,* 993 A.2d 1262 (Pa.Super.2010), the holding in *Etchison* "arose from the fact that the Commonwealth only proved the presence of cannabinoid metabolites in the defendant's bloodstream and marijuana is a fat-soluble drug that can remain in the blood for months." *Id.* at 1267.

cient evidence for a conviction under Subsection 3802(d)(2) is without

Appellant, however, goes on to argue that even if expert testimony were not *per se* required, it was necessary **in this matter** to establish that Appellant's accident was caused by impairment from marijuana use. Appellant's Brief at 12–15. According to Appellant, the blood test result showing the presence of metabolites in his blood stream, without any expert explanation, fails to establish that he was under the influence of a controlled substance at the time of the accident. *Id.* at 11–13. Moreover, Appellant argues that the only other evidence establishing intoxication is his admission that he had smoked marijuana earlier in the day. *Id.* at 12. Appellant contends that his admission, by itself, is insufficient to establish that his use of marijuana prevented him from safely operating his vehicle on the occasion in question. *Id.* Consequently, Appellant argues that the evidence was insufficient to establish guilt under Subsection 3802(d)(2). *Id.* at 12–15.

■ We agree with Appellant that, under the circumstances of this matter, any reliance upon the result of Appellant's blood test for purposes of establishing causation under Subsection 3802(d)(2) required expert testimony. Specifically, the result of Appellant's blood test showed the presence of carboxy acid metabolite in Appellant's system. Appellant's Brief at 12. That metabolite is a waste product of marijuana, not evidence of active marijuana. *Id.* What the discovery of carboxy acid in Appellant's blood stream reveals as far as Appellant's ability to safely drive that afternoon is not an issue within the knowledge of an ordinary layman. *See Griffith,* 32 A.3d at 1239. Indeed, absent expert explanation, Appellant's blood test result tells us only that Appellant ingested marijuana in the past; the test result, without expert explanation, fails to establish that Appellant was under the influence of marijuana at the time of the accident. Consequently, we agree with Appellant that the Commonwealth needed to present expert testimony regarding Appellant's blood test result for the jury to appropriately consider that result when evaluating the cause of the accident for purposes of Appellant's Subsection 3802(d)(2) conviction.

However, that we may not consider Appellant's blood test result for sufficiency purposes under Subsection 3802(d)(2), does not mean that there was insufficient evidence to support a conviction under that subsection. Indeed, we disagree with Appellant that the only other evidence against him is his confession to having smoked marijuana earlier in the day. Appellant's Brief at 12.

■ To the contrary, the Commonwealth presented evidence that upon arriving at the scene of the accident, Trooper Trate observed that, despite the fact that Appellant's three daughters were injured (one bleeding profusely), covered in glass, and crying, Appellant was unusually calm in his demeanor. N.T. 9/14/2010, at 61. Appellant's reaction caused Trooper Trate, who is trained to detect the effects of controlled substances on the body, to suspect that Appellant was under the influence. *Id.* at 62. Trooper Trate inquired as to whether Appellant was intoxicated, to which Appellant confessed that he had not been drinking, but that he had smoked marijuana earlier in the day. *Id.* However, before Trooper Trate could inquire further or perform any field sobriety tests, Appellant left the scene, accompanying his daughters to the hospital. Later, at the hospital, Appellant confessed to having smoked half a bowl of marijuana at approximately noon that day.

In the meantime, Trooper Mays remained with the vehicles involved in the

accident, and entered Appellant's vehicle to obtain the registration and insurance information for that vehicle. Upon entry of the vehicle, Trooper Mays, who is trained to detect the smell of marijuana, smelled marijuana and discovered raw marijuana in the driver's side door. Finally, all evidence presented regarding the accident, including Appellant's own confession, indicates that the accident was Appellant's fault in that Appellant turned directly into on-coming traffic.

Considering the totality of the above circumstances, viewed in the light most favorable to the Commonwealth, we hold that there was sufficient evidence to establish that the accident was caused as a result of Appellant's inability to safely operate his vehicle due to the influence of marijuana. Therefore, we hold that, even without the consideration of Appellant's blood test result, the evidence was sufficient to establish Appellant's conviction under Subsection 3802(d)(2).[6]

Appellant's second issue on appeal challenges the fact-finder's reliance upon his blood test result as evidence supporting his DUI convictions, arguing that the laboratory in question conducted the blood test on non-whole blood, requiring the Commonwealth to present expert testimony regarding the conversion from non-whole blood results to whole-blood results. Appellant's Brief at 15–20. Given that there was no expert testimony presented in this matter, Appellant argues that his blood test result cannot be considered for purposes of both of his driving under the influence of a controlled substance convictions (Subsections 3802(d)(1) and 3802(d)(2)), and that the remaining evidence was insufficient to establish the elements of either of those crimes.[7] We disagree.

The trial court aptly summarized our jurisprudence regarding the difference between whole blood and serum blood tests:

While our statutes do not address in what form blood must be tested, our courts have addressed this issue with respect to alcohol-related testing. The general rule for alcohol related DUIs is that only tests performed on whole blood will sustain a conviction under Section 3802. Thus, evidence of blood serum, plasma or supernatant testing, without conversion, will not suffice. *See e.g., Commonwealth v. Renninger,* [452 Pa.Super. 421] 682 A.2d 356 (Pa.Super.1996); *Commonwealth v. Michuck,* [454 Pa.Super. 594] 686 A.2d 403 (Pa.Super.1996); [*Commonwealth v. Wanner,* 413 Pa.Super. 442, 605 A.2d 805, 808 (Pa.Super.1992) ]; *Commonwealth v.*

---

**6.** Appellant's argument correctly points out that the trial court misinterpreted the transcript when it held that Trooper Mays testified that he smelled "burnt" marijuana within Appellant's car, and that Trooper Trate testified that Appellant's constricted pupils contributed to his conclusion that Appellant was intoxicated. Appellant's Brief at 13–14. We agree with Appellant that Trooper Mays' testimony was unclear as to whether the smell he observed was burnt or raw marijuana, and we agree that Appellant's constricted pupils were not an indication of intoxication.

Nevertheless, for the reasons set forth above, we hold that the evidence was sufficient to establish Appellant's intoxication without relying upon either of the trial court's mistaken factors. Moreover, if the smell of "burnt" marijuana was a necessary factor in our determination, given the small quantity of raw marijuana recovered from Appellant's car, and given that it was found enclosed within a cigarette case, we feel it a reasonable inference to conclude that the smell observed within his car was that of burnt rather than raw marijuana.

**7.** Given that we have affirmed Appellant's judgment of sentence for his conviction under Subsection 3802(d)(2) without consideration of his blood test result, we need not consider this issue with regard to Appellant's Subsection 3802(d)(2) conviction.

*Bartolacci*, [409 Pa.Super. 456] 598 A.2d 287 (Pa.Super.1991). The reasoning for this rule rests on the distinction between whole blood and blood serum:

> The distinction between whole blood and blood serum is significant. Serum is acquired after a whole blood sample is centrifuged, which separates the the blood cells and fibrin, the blood's clotting agent, from the plasma-the clear liquid i[n] the blood serum. When blood serum is tested the results will show a blood alcohol content which can range from between 10 to 20 percent higher than a test performed on whole blood. The reason for this is because the denser components of whole blood, the fibrin and corpuscles, have been separated and removed from the whole blood, leaving the less dense serum upon which the alcohol level test is performed. The value of the blood alcohol content in the serum is then determined. Because the serum is less dense than whole blood, the weight per volume of the alcohol in the serum will be greater than the weight per volume in the whole blood. Thus, an appropriate conversion factor is required to calculate the corresponding alcohol content in the original whole blood sample.

*Michuck*, 686 A.2d at 405–406 (internal citations [and footnotes] omitted).

Trial Court Opinion, 3/4/2011 at 14.

While the jurisprudence regarding non-whole blood testing is well established for alcohol-related offenses, we have not ruled on whether non-whole blood testing is admissible, absent expert testimony presenting an appropriate conversion, for purposes of establishing the presence of a controlled substance. Appellant, therefore, argues that the testing conducted on his blood was non-whole blood testing, and that there should be no difference in the consideration of test results for controlled substances as there is with alcohol. Appellant's Brief at 18–20. According to Appellant, "a conversion factor is required to ensure that the test results are not artificially inflated to rise above the minimum detection level or the cut off limit where something other than whole blood is tested." *Id.* at 19.

■ Appellant, however, disregards the plain language of the controlled substances statute. Unlike the subsections addressing alcohol-related offenses which require that an accused's blood alcohol content be within a specific percentage range (*see* 75 Pa.C.S.A. §§ 3802(a)(2), (b) & (c)), the controlled substance subsection at issue here prohibits any amount of the controlled substance to be within an accused's system (*see* 75 Pa.C.S.A. § 3802(d)(1)). As we explained in *Etchison*, "[a] conviction under [Subsection 3802(d)(1)] does not require that a driver be impaired; rather, it prohibits the operation of a motor vehicle by any driver who has any amount of specifically enumerated controlled substance in his blood." *Etchison*, 916 A.2d at 1174. Specifically, Subsection 3802(d)(1) states that:

> (d) Controlled substances.—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> (1) There is in the individual's blood **any amount of a:**
>
> (i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), 1 known as The Controlled Substance, Drug, Device and Cosmetic Act;
>
> (ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been

medically prescribed for the individual; or

(iii) **metabolite of a substance under subparagraph (i) or (ii).**

75 Pa.C.S.A. § 3802(d)(1) (emphasis added). Therefore, for purposes of a conviction under Subsection 3802(d)(1), a conversion of non-whole blood to whole blood test results is unnecessary because concerns about an inflated test result are irrelevant; so long as **any** amount of the substance is within the individual's blood, the evidence is sufficient to establish that element of the crime.

In this matter, Appellant admitted to driving a vehicle after which his blood was tested and established to contain 43ng/ml of carboxy acid. Carboxy acid is a metabolite of marijuana, a Schedule I controlled substance. Therefore, the evidence was sufficient to establish Appellant's conviction under Subsection 3802(d)(1).[8]

Appellant's third issue on appeal challenges the sufficiency of the evidence for his conviction of recklessly endangering another person ("REAP"). Pursuant to 18 Pa.C.S.A. § 2705, "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." "[D]riving under the influence of intoxicating substances does not create legal recklessness *per se* but must be accompanied with other tangible indicia of unsafe driving to a degree that creates a substantial risk of inju-

ry which is consciously disregarded." *Commonwealth v. Mastromatteo,* 719 A.2d 1081, 1082 (Pa.Super.1998).

For example, in *Mastromatteo,* police observed the defendant driving in a very slow fashion and, while she never came close to other vehicles, she crossed the centerline on several occasions. *Id.* at 1082. As a result, the police initiated a traffic stop for suspicion of drunk driving. *Id.* It was then discovered that the defendant had consumed alcohol and marijuana, had a glass in the front seat, which appeared to contain alcohol, and had her young son in the car with her. *Id.* at 1081–1084. The defendant was convicted of both DUI and REAP. *Id.* at 1081.

On appeal, we affirmed the defendant's judgment of sentence for DUI, but reversed the REAP conviction. *Id.* at 1084. In that matter we noted that, while we do not condone driving while intoxicated, "undoubtedly there are certain drivers who will exhibit safer driving conduct while legally intoxicated than certain drivers do when they are sober." *Id.* at 1083 n. 4. Rather, we explained, "[w]hat is material is actual reckless driving or conduct [other than just intoxication] ... for it is this conduct which creates the peril in question." *Id.* at 1083. Because in *Mastromatteo* there was no evidence of reckless driving or conduct, other than the defendant's intoxication, we were constrained to reverse defendant's REAP conviction. *Id.* at 1084.[9]

8. Appellant argues that his blood test result should not be considered for sufficiency purposes for the alternative reason that the result was below the Department of Health's minimum detection level for admissibility in court. Appellant's Brief at 18–19. That issue, however, challenges the admissibility of the result, not the sufficiency of the evidence. The admissibility of Appellant's test result is not presented in this appeal. Therefore, Appellant's alternative argument is without merit. More-

over, we echo our holding in *Etchison,* stressing that Subsection 3802(d)(1) "prohibits the operation of a motor vehicle by *any* driver who has *any* amount of specifically enumerated controlled substance in his blood, regardless of impairment." *Etchison,* 916 A.2d at 1174 (emphasis in original).

9. In *Mastromatteo* we expressed our opposition to drinking and driving, especially with one's young son in the car. *Mastromatteo,* 719 A.2d at 1084. However, we noted that

Alternatively, in *Commonwealth v. Sullivan*, 864 A.2d 1246, 1250 (Pa.Super.2004), we affirmed the defendant's REAP conviction where, while intoxicated, the defendant drove one quarter mile in the wrong direction on an off-ramp. Such additional evidence of recklessness, we held, "constitute[d] tangible indicia of unsafe driving and sufficiently establish[ed] the *mens rea* necessary for a REAP conviction." *Sullivan*, 864 A.2d at 1250; *see also Commonwealth v. Jeter*, 937 A.2d 466, 469 (Pa.Super.2007) (distinguishing case from *Mastromatteo*, and holding that evidence that defendant weaved in and out of the roadway and other drivers for several miles, had a blood alcohol level of 0.21, and ultimately lost control of his car, striking the center barrier with enough force to blow out his front tire, was sufficient to establish defendant's conviction for reckless driving).

In this matter, for reasons similar to those asserted in support of his sufficiency of the evidence claim with regard to Subsection 3802(d)(2), Appellant asserts that, absent expert testimony, we may not rely upon his blood test result to establish causation. Appellant's Brief at 20–25. We agree. Furthermore, Appellant argues that, having excluded consideration of his blood test result, the only other evidence that Appellant acted recklessly such that he placed other persons in danger of death or serious bodily injury is his admission to having smoked marijuana earlier in the day. *Id.* That admission, Appellant contends, is insufficient to establish his convictions for REAP. *Id.*

Appellant's acts in this matter are deplorable; he got high on an illegal substance and then drove his three young daughters in his vehicle, resulting in an accident injuring all three of his daughters and another innocent driver. Nevertheless, we are constrained to agree that, absent additional evidence of his reckless driving or conduct, the evidence was insufficient to establish that Appellant recklessly endangered the lives of others. Based upon our holding in *Mastromatteo* and its progeny, the Commonwealth was required to present evidence of recklessness **in addition to** Appellant's intoxication. The only other relevant evidence presented in this matter is that an accident occurred. However, that Appellant exercised poor judgment in negotiating a left turn does not equate to recklessness. Unlike the defendant's conduct in *Sullivan* and *Jeter*, Appellant was not observed acting recklessly, for example dangerously weaving through traffic in an aggressive manner, or driving the wrong way on an off ramp. Consequently, we are constrained to vacate Appellant's judgment of sentence with respect to his three REAP convictions.

Given that our disposition of Appellant's judgment of sentence for REAP potentially disrupts the trial court's overall sentencing scheme, we remand for resentencing.

Judgment of sentence affirmed in part and vacated in part. Case remanded for resentencing. Appellate jurisdiction relinquished.

STRASSBURGER, J., files a Concurring and Dissenting Opinion.

despite our opposition, we are unable to expand the DUI statute to include additional punishment for criminal conduct that the offense was not designed to address. *Id.* "If there should be additional offenses tied to DUI, say DUI with a passenger, then they likewise can be implemented by the legislature through the democratic process. However, we are unwilling to impose such value judgments upon the citizens of the Commonwealth by shoehorning conduct into the somewhat broad definitions of certain criminal offenses." *Id.*

CONCURRING AND DISSENTING
OPINION BY STRASSBURGER, J.:

I join in the Majority's disposition of Appellant's second issue, where this Court concludes that the evidence was sufficient to support Appellant's conviction pursuant to 75 Pa.C.S.A. § 3802(d)(1)(i). I also join in the Majority's conclusion that the evidence was insufficient to support Appellant's REAP conviction. However, I disagree with the Majority's conclusion that the evidence was sufficient to support Appellant's conviction pursuant to 75 Pa. C.S.A. § 3802(d)(2) (general impairment). Accordingly, I respectfully dissent and offer the following analysis.

A person may be convicted of the portion of the DUI statute regarding general impairment where an individual operates or is in actual physical control of the movement of a vehicle where "[t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(d)(2).

Instantly, the Majority first concludes that the Commonwealth needed to "present expert testimony regarding Appellant's blood test result for the jury to appropriately consider that result when evaluating the cause of the accident for purposes of Appellant's Subsection 3802(d)(2) conviction." Majority Opinion at 308. I agree with this portion of the opinion. Where I part ways with the Majority is in its second conclusion on this issue that the evidence was sufficient to support the conviction even without consideration of the blood test result.

The following is a summary of the evidence presented in the light most favorable to the Commonwealth as the verdict winner. The accident occurred in the daylight on a clear day. N.T., 9/14/2010, at 25. Appellant made a left turn in front of an oncoming car without enough clearance, and the accident was definitely Appellant's fault. Trooper Mays testified that when he went to search the Appellant's vehicle, he smelled marijuana[1] in Appellant's car and then found marijuana there. *Id.* at 31–32. Trooper Trate testified that upon interacting with Appellant when he arrived at the scene of the accident, Appellant was "unusually calm." Appellant admitted to Trooper Trate that the accident was Appellant's fault, that he was "a little distracted," and that he had smoked marijuana earlier that day. *Id.* at 61–62.

This evidence is insufficient to show beyond a reasonable doubt that Appellant was impaired at the time of the accident. Even though the accident was Appellant's fault, accidents occur every day where the individual at fault was not under the influence of an intoxicating substance. Additionally, Appellant's calm demeanor after the accident is not evidence of anything. Everyone reacts differently after an accident, and in light of the fact that Appellant's children were injured, it is probably a good thing that Appellant was not hysterical, as that would not have helped an already difficult situation. Finally, Appellant's admission to having smoked marijuana earlier in the day and the fact that there was a burnt marijuana smell in the car (with absolutely no indication of when that marijuana may have been smoked) are simply not enough to prove Appellant was impaired at the time of the accident.

1. The Majority discusses the issue of whether this was a "burnt" or "raw" marijuana smell in footnote 6 of its memorandum. I agree that it is a "reasonable inference to conclude that the marijuana smell observed within [Appellant's] car was that of burnt rather than raw marijuana." Majority Opinion at footnote 6.

Accordingly, I would reverse Appellant's conviction under 75 Pa.C.S. § 3802(d)(2).[2]

**2.** I also point out that the Majority's conclusion that Appellant was "under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive," pursuant to 75 Pa.C.S. § 3802(d)(2), but did not "recklessly [engage] in conduct which places or may place another person in danger of death or seriously bodily injury," pursuant to 18 Pa.C.S. § 2705, results in an inconsistent outcome in this case. The Majority's reliance on *Commonwealth v. Mastromatteo*, 719 A.2d 1081 (Pa.Super.1998) is misplaced.

In that case, we held that "driving under the influence of intoxicating substances does not create legal recklessness *per se* but must be accompanied with other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which is consciously disregarded." *Id.* at 1082. This case is distinguishable. The police stopped Mastromatteo's vehicle after they received a referral regarding a domestic situation between Mastromatteo and her husband. The police observed Mastromatteo driving "in a relatively slow fashion and never [coming] close to any other vehicles." *Id.* The vehicle drifted over the middle line on three occasions which prompted the traffic stop. This Court upheld Mastromatteo's conviction for DUI (general impairment), but reversed as to REAP because there was no tangible indicia of unsafe driving.

In the instant case, however, police arrived on the scene when Appellant caused a serious accident. Thus, if Appellant was generally impaired, as the Majority concludes, the logical next step would be to conclude that his impairment caused his unsafe driving and resulting accident, and Appellant's conviction for REAP should stand.