J-A18005-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIAM MICHAEL ANDREW | |
| Appellant | No. 587 WDA 2021 |

Appeal from the Judgment of Sentence March 11, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0004651-2020

BEFORE: STABILE, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY **STABILE, J.:** **FILED: SEPTEMBER 28, 2022**

Appellant, William Michael Andrew, argues in this appeal that the evidence is insufficient to support his conviction for reckless endangerment under 18 Pa.C.S.A. § 2705. We hold that the evidence is sufficient to support Appellant's conviction, and we affirm.

The trial court accurately summarized the evidence adduced during trial as follows:

> At trial, the Commonwealth called William Tomosky, a police officer in Elizabeth Borough, Pennsylvania. He testified that at approximately 9:45 pm on May 14, 2020, he was assisting at a traffic accident scene in the 5200 block of Route 51.
>
> He was positioned at a traffic control point at the off ramp of Route 136, a quarter mile before the off ramp. The officer had set up a cone pattern, and his police unit was blocking the inside lane with all lights activated. A fire rescue truck, with its lights activated, was also blocking the lane of traffic just after the officer's vehicle. He also stated that several police vehicles, fire equipment and tow trucks, with lights on, had the area well lit.

The officer was standing near cones, which blocked the inside lane of the roadway, so that traffic would get off at the ramp to [Route] 136. The area was well lit according to Officer Tomosky's testimony. The officer testified that approximately 20 to 30 cars passed through his location without incident. The officer then noticed one vehicle continuing in the inside lane, the lane which was blocked off. The officer signaled for it to pull over, but the vehicle kept coming at him. The officer jumped toward the median to get out of the way of the vehicle.

The officer was using a flashlight to signal cars to move over, and was wearing a green, fluorescent reflective vest at the time. The officer estimated the speed of the vehicle at 50 mph when it passed him. He testified that other cars had slowed down significantly. He testified that traffic was backing up, cars were stopping or slowing to 20 mph or less, "down to a crawl." Despite the slowdown, one vehicle drove nearly 50 mph into the area, causing the officer to jump out of the way. This vehicle eventually stopped as the roadway was blocked with a firetruck. [Appellant] was identified as the operator, who didn't have the vehicle insured. This was verified with PennDOT who confirmed the cancellation of insurance.

[Appellant] also testified. He testified that it was raining, with a heavy mist, while he travelled south on Route 51 on the night of the accident. He was able to observe the flash of red and blue lights in the distance. He observed a fire truck and a police car half a mile away, sideways across the travel lanes. He was able to see the vehicles from the crest of a hill in advance of the location of the emergency vehicles.

[Appellant] testified that "out of nowhere, the officer appeared." He claimed he did not see the officer until he passed him, and the officer jumped toward the median. [Appellant] testified that he has a commercial driver's license and has taken several defensive driving courses as part of his employment. [Appellant] admitted to not having his vehicle insurance. On cross examination, [Appellant] estimated his speed at 45 mph.

[Appellant]'s wife, Ashley Andrew, testified that she did not see the officer until he was at her husband's door. She described the conditions that night as being foggy, raining and dark, although she did see the lights. She denied seeing Officer Tomosky in the

- 2 -

> road setting cones. She denied seeing the officer directing traffic. She also stated that her vehicle was travelling 40 mph.

Trial Court Opinion, filed January 11, 2022, at 3-5.

On March 11, 2021, following a bench trial, the court found Appellant guilty of reckless endangerment and failure to have financial responsibility (75 Pa.C.S.A. § 1786) but not guilty of aggravated assault. On the same date, the court imposed sentence. Appellant filed timely post-sentence motions, which were denied, and a timely notice of appeal.

Appellant raises a single issue in this appeal, "Was the evidence insufficient to support the conviction for Recklessly Endangering Another Person (REAP) as the Commonwealth failed to establish the required *mens rea*? In other words, as the actions here do not rise to the necessary level of gross negligence, must the conviction be overturned?"

In a challenge to the sufficiency of evidence, our standard of review "is to determine whether, when viewed in a light most favorable to the verdict winter, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt." **Commonwealth v. Akhmedo**, 216 A.3d 307, 322 (Pa. Super. 2019) (*en banc*). "[T]he trier of fact, in this case the trial court, is free to believe all, part, or none of the evidence presented when making credibility determinations. In deciding a sufficiency of the evidence claim, this court may not reweigh the evidence and substitute our judgment for that of the fact-finder." **Commonwealth v. McClellan**, 178 A.3d 874, 878 (Pa. Super. 2018).

The crime of reckless endangerment takes place when a defendant "engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. "Reckless endangerment of another person (REAP) requires the creation of danger, so the Commonwealth must prove the existence of an actual present ability to inflict harm to another." **Commonwealth v. Shaw**, 203 A.3d 281, 284 (Pa. Super. 2019). Furthermore,

> [a] person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3). Recklessness "implicates knowledge in two ways: (1) the actor must consciously (i.e., with knowledge) disregard a substantial and unjustifiable risk; and (2) the risk that the actor disregards is measured by the circumstances known to the actor." **Commonwealth v. Sanders**, 259 A.3d 524, 532 (Pa. Super. 2021) (*en banc*). "Conscious disregard" of a risk, in turn, "involves first becoming aware of the risk and then choosing to proceed in spite of the risk." **Id.**

The trial court reasoned that the evidence was sufficient to sustain Appellant's conviction for reckless endangerment:

> [It] was dark and the weather conditions were foggy and rainy. The lights of emergency vehicles were clearly visible to [Appellant] a substantial distance from the location of Officer Tomosky's

vehicle. [Appellant] continued to maintain a speed of 45 mph in an area where all other traffic had slowed to a crawl, 20 mph or less, stop and go. Twenty or thirty other cars [passed] this area without incident. The officer had his emergency lights on, five other emergency vehicles were at the scene. His vehicle and a fire truck were blocking the roadway. The officer had placed cones on the roadway, and he was directing traffic with a flashlight while wearing a reflective vest. [Appellant] barreled into the area of the roadway in a vehicle weighing over 6,000 pounds, without car insurance, and nearly struck the police officer, causing him to jump out of the way to avoid being hit.

[Appellant], who had attended four defensive driving courses, and was employed as a professional with a commercial driver's license, should have known better that night to slow down and proceed with caution.

Trial Court Opinion, 1/11/22, at 5-6. The record also indicates that from the crest of a hill about half a mile north of where the officer was standing, Appellant could see the lights of the fire trucks ahead of him as well as red and blue police lights. N.T., 3/11/21, at 32-33. Viewed as a whole, the evidence demonstrates that (1) Appellant had ample notice as he crested the hill of an accident scene on the roadway, (2) the foggy and rainy conditions, as well as the presence of cones and well-lit emergency and police vehicles, required drivers to slow down, (3) these conditions caused all other drivers at the scene to slow to a crawl, (4) Appellant was consciously aware of a substantial risk created by speeding in this emergency area, and (5) he disregarded this risk by driving at a manifestly unsafe speed, forcing the officer to jump out of the way. We agree with the trial court that the evidence was sufficient to sustain Appellant's conviction for reckless endangerment.

The decisions relied upon by Appellant in his challenge to the sufficiency of the evidence, **Commonwealth v. Gilliland**, 422 A.2d 206 (Pa. Super. 1980), and **Commonwealth v. Hutchins**, 42 A.3d 302 (Pa. Super. 2012), are distinguishable from this case. In **Gilliland**, the defendant was driving his boat on a lake when he drove into the path of an oncoming vessel, killing one of its occupants. The evidence did not prove which boat had the right of way or the appropriate speed limit on the lake where the accident occurred. Nor was there any allegation that the defendant was driving at an excessive speed or in an erratic manner. **Id.**, 422 A.2d at 207. This Court held that the defendant's failure to avoid the collision did not rise to the level of homicide or REAP because the defendant "simply failed to see the boat which the decedent was driving. There was no conscious realization of a substantial risk which was subsequently disregarded, but rather a general lack of awareness of the situation on the part of the appellant." **Id.** Conversely, in the present case, the evidence showed that Appellant was driving at an unsafe speed, saw the accident scene ahead of him, and had the time and opportunity to heed the numerous glaring indicators to slow down, but he failed to slow down, unlike numerous other motorists who drove by the accident scene, and he forced the officer to jump out of the way to avoid being hit.

In **Hutchins**, the defendant was driving with his three young daughters when he made a left turn in front of another car, causing a serious accident. A responding police officer noticed signs that the defendant was under the

influence of marijuana, found marijuana in the defendant's vehicle, and testified that based on his experience and training, the defendant was under the influence of marijuana that impaired his ability to drive. The defendant was convicted of driving while intoxicated and reckless endangerment. On appeal, this Court affirmed his DUI conviction but reversed his conviction for reckless endangerment. We explained that while the defendant behaved deplorably by getting high and driving with his daughters in the car, his "driving under the influence of intoxicating substances does not create legal recklessness *per se* but must be accompanied with other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which is consciously disregarded." **Id.**, 42 A.3d at 311. The court noted that the only other relevant evidence presented was that an accident occurred but that exercising poor judgment in negotiating a left turn did not equate to recklessness. **Id.** at 312. The present case is different. Appellant consciously disregarded multiple emergency vehicles, a blocked lane of traffic, and emergency cones while driving at excessive speed in rain and fog as he approached the accident scene.

We also think it helpful to distinguish **Sanders** even though neither party cited this decision. There, while driving a bus in the scope of her employment with Southeastern Pennsylvania Transportation Authority ("SEPTA"), the defendant struck and killed a 93-year-old pedestrian as he crossed the street. The defendant was found guilty of, *inter alia*, homicide by

vehicle, a crime requiring proof of recklessness or gross negligence.[1]  This Court reversed her conviction for homicide by vehicle on the ground that the evidence was insufficient to support finding that defendant drove recklessly. Although the victim was legally within the crosswalk and remained clearly visible as the defendant turned, and even though the defendant failed to use both hands to turn her wheel as required by SEPTA regulations, the evidence showed that the defendant stopped the bus at a red light for 45 seconds and then waited an additional 2.33 seconds after the light turned green before turning.  The defendant testified that when the light turned green, she looked left, forward, and right before moving, to make sure there was no oncoming traffic.  She simply did not see the victim at any point before moving.  We concluded:

> As a matter of law, this evidence constitutes careless driving (less than willful or wanton conduct but more than ordinary negligence) but not recklessness (or gross negligence).  Absent from this case is any evidence that Appellant was consciously aware of a substantial and unjustifiable risk created by her conduct that would cause injury to the victim.

*Id.* at 533.  We added:

> Had Appellant's bus barreled through the red light without stopping, that would have been a conscious disregard of a substantial and unjustifiable risk, the essence of recklessness . . . Alternatively, had Appellant been speeding, tailgating, erratically changing lanes, crossing double yellow lines, or racing another vehicle at the time of the collision, we would readily find recklessness, as we have in prior decisions.

---

[1] Recklessness and gross negligence are equivalent under the homicide by vehicle statute.  *Id.*, 259 A.3d at 531.

*Id.* The defendant's misconduct, however, "was not nearly as egregious," since she "stopped the bus at a red light for 45 seconds and then waited an additional 2.33 seconds after the light turned green." *Id.*

In our view, Appellant's conduct in the present case surpassed that of the bus driver's conduct in *Sanders*, even though here fortunately no bodily harm was suffered by Officer Tomosky. The bus driver in *Sanders* did not see the victim; Appellant saw the accident scene and emergency vehicles well in advance of the near collision with the officer. The bus driver paused for nearly a minute at a red light and then waited over two seconds after the light turned green before turning. Appellant, on the other hand, never slowed down despite adverse weather and the presence of cones and well-lit emergency and police vehicles. His indifference to the very conditions that caused all other drivers to slow down was equivalent in recklessness to the types of conduct we warned against in *Sanders* quoted above (running red lights, speeding, tailgating, etc.).

For these reasons, we reject Appellant's challenge to the sufficiency of the evidence and affirm his conviction for reckless endangerment.

Judgment of sentence affirmed.

Judge Murray joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  09/28/2022