J-A29041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRYANT D. TATE | : | |
| | : | |
| Appellant | : | No. 488 WDA 2023 |

Appeal from the Judgment of Sentence Entered March 28, 2023
In the Court of Common Pleas of Crawford County
Criminal Division at CP-20-CR-0000898-2021

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED:  January 4, 2024**

Bryant D. Tate (Appellant) appeals from the judgment of sentence imposed following his conviction of driving under the influence of a controlled substance (DUI), driving on roadways laned for traffic, and careless driving.[1] Also, Appellant's public defender (Counsel) has filed a petition to withdraw and accompanying brief in accordance with **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). We grant Counsel's application to withdraw and affirm the judgment of sentence.

The trial court summarized the relevant factual background as follows:

Trooper Jeffrey Slater testified to his interaction with [Appellant] on August 11, 2021.  At approximately 6:00 a.m.[,] Trooper Slater was dispatched to the area of State Route 98 for

_____

[1] 75 Pa.C.S.A. §§ 3802(d), 3309(1), 3714.

the report of an erratic driver. The report indicated that a citizen was following a white box truck with "Ryder" written on the back of the truck. The trooper traveled to the area of State Route 98 and was informed that the white box truck had entered onto Interstate 79 headed north. On that particular part of I-79[,] the right-hand lane was closed because of an active construction zone.

The trooper activated his overhead lights and passed seven vehicles in order to catch up with the box truck. Once behind the truck he observed that the driver could not maintain the vehicle in the proper lane of travel. The truck traveled over the fog line several times, almost striking the guiderail. The truck then traveled across the lane designator and actually struck a lane designator that had been set up by the construction crew. The truck came inches away [from] striking a construction vehicle that was parked within the construction zone.

The prosecution admitted into evidence a copy of the mobile video recording that recorded some of [Appellant's] driving and the traffic stop that was conducted. The video recording corroborated Trooper Slater's testimony. The truck was continuously weaving in and out of its proper lane of travel. At one point the truck nearly struck the guiderail.

Trooper Slater testified about the details of his contact with [Appellant] after he had conducted a traffic stop. [Appellant] appeared to be sleepy, moving slowly and sluggish. His speech was "very thick and slurred." [Appellant] admitted that he was prescribed methadone, oxycodone and other medications that he could not name. He informed the trooper that he had taken his medications the night before at 11:00 p.m. Trooper Slater did not ask [Appellant] to perform the walk-and-turn or the one-leg stand field sobriety tests because [Appellant] stated that he had an injured foot.

Trooper Slater opined that [Appellant] was under the influence of drugs to a degree which impaired [Appellant's] ability to safely drive his vehicle. On [Appellant's] key chain was a small cylinder that contained "two circular pills and one-and-a-half rectangular pills." [Appellant] stated that the pills were his medications and that they were methadone and oxycodone. [Appellant] was placed under arrest at approximately 6:30 a.m.

- 2 -

[Appellant] refused to provide a sample of his blood for chemical testing.

Trial Court Opinion, 5/31/23, at 2-3.

About an hour after Appellant's arrest, Pennsylvania State Police Corporal Kyle Callahan (Cpl. Callahan), a certified Drug Recognition Expert (DRE), evaluated Appellant. The trial court explained:

A [DRE] is an individual who has specialized training in identifying individuals who are under the influence of a drug or drugs and alcohol. Cpl. Callahan detailed the extensive certification process that he went through in order to become a [DRE]. DRE's use a systematic and standardized procedure which is done every time a DRE is called upon to do an evaluation. [Cpl. Callahan] explained that there are seven different drug categories. He then forms an expert opinion about what drugs are influencing and impairing the [subject]. Defense counsel did not object to the [c]ourt recognizing Cpl. Callahan as a [DRE] and … did not object to [Cpl. Callahan] providing expert opinion testimony.

[Cpl. Callahan] explained in detail the 12-step process that he undertakes when conducting a drug influence evaluation on a subject. [Cpl. Callahan] considered Trooper Slater's observations of [Appellant] during the traffic stop. He described his observations of [Appellant] during the evaluation. [Appellant's] eyes were bloodshot, and his eyelids were droopy. [Appellant] exhibited some confusion when asked about sleeping. [Appellant] admitted to taking various medications for Sickle Cell disease and admitted to taking methadone and oxycodone.

[Cpl.] Callahan examined [Appellant's] eyes and found that [Appellant's] left eye failed to converge. During the divided attention tests[, Appellant] had eyelid tremors and a two-inch backward sway. During the one leg stand[, Cpl. Callahan] observed two out of the four clues present. [Appellant] swayed while balancing and he put his foot down on three occasions. During the finger to nose test [Appellant] had slow, sluggish reactions. During the dark room examination, [Appellant's] pupils were constricted and below the DRE average range when examined in room light. When his pupils were examined in near total darkness[,] his pupil size was below the DRE average range.

Cpl. Callahan examined [Appellant's] mouth and found [Appellant's] oral cavity was dry and he had a sticky substance around his lips, mouth and tongue. [Cpl.] Callahan testified that dry mouth was indicative of central nervous stimulants as well as narcotic analgesics.

Finally, [Cpl.] Callahan, without objection from defense counsel, opined that [Appellant] was under the influence of both central nervous system depressants and a narcotic analgesic that impaired his ability to safely drive a motor vehicle. [Cpl.] Callahan indicated that methadone and oxycodone are narcotic analgesics.

*Id.* at 3-4 (citation to record omitted).

Appellant pled guilty to the summary offenses of driving on roadways laned for traffic and careless driving. After a bench trial, Appellant was convicted of DUI. For the DUI conviction, the trial court sentenced Appellant to 7 days to 6 months in jail with immediate parole, a $1,000 fine, and costs. The court also ordered Appellant to complete Alcohol Highway Safety School and undergo a drug and alcohol evaluation and comply with suggested treatment. Additionally, the trial court imposed a fine for each summary conviction. Appellant timely appealed.

On August 30, 2023, Counsel filed in this Court an ***Anders*** brief and a petition to withdraw. Appellant has not responded to Counsel's petition.[2]

We address Counsel's petition to withdraw before considering the issues raised in the ***Anders*** brief. ***See Commonwealth v. Garang***, 9 A.3d 237, 240 (Pa. Super. 2010) ("When presented with an ***Anders*** brief, this Court

---

[2] The Commonwealth has not filed an appellee brief.

may not review the merits of the underlying issues without first passing on the request to withdraw." (citation omitted)). Counsel seeking to withdraw from representation must

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Pursuant to ***Santiago***, counsel must also

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Id.*** (citing ***Santiago***, 978 A.2d at 361). Once counsel has complied with the procedural requirements, we review the record and render an independent judgment as to whether the appeal is wholly frivolous. ***See Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Instantly, Counsel filed an ***Anders*** brief and a separate petition to withdraw. In her petition, Counsel confirms she conducted a thorough and conscientious review of the record and concluded Appellant's appeal is frivolous. ***See*** Petition to Withdraw, 8/30/23. Additionally, Counsel sent a letter to Appellant, informed him of her intention to withdraw, and advised

Appellant of his right to retain new counsel or proceed *pro se* to raise additional claims. The record reflects that Counsel furnished Appellant with copies of the petition to withdraw and the **Anders** brief. The **Anders** brief summarizes the factual and procedural history of this appeal and explains Counsel's reasons for concluding that the appeal is wholly frivolous. As Counsel has satisfied the procedural requirements of **Anders** and **Santiago**, we review the record to determine whether Appellant's appeal is wholly frivolous.

Appellant challenges the sufficiency of evidence supporting his DUI conviction. **See Anders** Brief at 10-13. Specifically, Appellant argues

> the Commonwealth did not offer expert testimony from any medical professional that could offer an opinion as to Appellant's medical condition, Sickle Cell Anemia[,] and the accompanying prescription medications as an explanation for Appellant's appearance and overall demeanor on the night in question.

**Id.** at 10. Counsel acknowledges this issue is waived because trial counsel did not object to Cpl. Callahan's qualification as an expert witness. **See id.** at 13-15.

When reviewing sufficiency challenges, we adhere to the following:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, this is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and

inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. LaBenne*, 21 A.3d 1287, 1289 (Pa. Super. 2011)

(citation omitted).

The trial court convicted Appellant under Section 3802(d)(2) of the

Vehicle Code:

**(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

* * *

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

This Court has explained,

Section 3802(d)(2) does *not* require that any specific amount or specific quantity of the drug be proven in order to successfully prosecute under that section. Rather, the Commonwealth must simply prove that, while driving or operating a vehicle, the accused was under the influence of a drug to a degree that impaired his or her ability to safely drive that vehicle.

*Commonwealth v. Hutchins*, 42 A.3d 302, 307 (Pa. Super. 2012) (emphasis

in original; citations and quotation marks omitted).

- 7 -

Expert testimony is not required to establish that a defendant's inability to drive safely was caused by a drug or combination of drugs. *Id.* at 1238. "Instead, impairment evidence should be drawn from the totality of the factual circumstances." *Commonwealth v. Spence*, 290 A.3d 301, 309 (Pa. Super. 2023). "Rather than insist on proof that may lie exclusively within Appellant's own bloodstream, which he refused to provide, we will instead turn to the totality of the Commonwealth's direct and circumstantial evidence." *Commonwealth v. DiPanfilo*, 993 A.2d 1262, 1268 (Pa. Super. 2010).

Counsel correctly observes that Appellant did not object to Cpl. Callahan's qualification as an expert. *See* N.T. (Volume I), 1/20/23, at 32 (defense counsel stating, "… I suppose the weight of the opinion is affected by his training and experience, so I have no objection to the information that's been presented and him using that."). Appellant's challenge to Cpl. Callahan's qualifications is therefore waived. *Commonwealth v. Duffy*, 832 A.2d 1132, 1137 (Pa. Super. 2003) ("In order to preserve an issue for review, a party must make a timely and specific objection." (citation omitted); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Further, to the extent Appellant argues that the Commonwealth should have presented an expert to explain the interaction of Sickle Cell Anemia and prescription medications, Appellant has failed to demonstrate that the Commonwealth bears such burden. We

reiterate that a conviction under subsection 3802(d)(2) need not be supported by expert testimony. *See Hutchins*, 42 A.3d at 307.

Notwithstanding waiver, we address Appellant's sufficiency claim given the requirement that this Court conduct its own review. At trial, Trooper Slater testified that he received a dispatch concerning an erratic driver. N.T., 1/20/23, at 7. After locating the vehicle, Trooper Slater observed the vehicle cross the fog line several times, and almost hit a guiderail. *Id.* at 10. Trooper Slater also testified that the vehicle crossed a modified lane established by a construction crew, and struck one of the lane designators. *Id.*; *see also id.* (explaining the vehicle nearly hit a parked construction vehicle). The Commonwealth also introduced a copy of the mobile video recording from the police cruiser.[3] *See id.* at 10-11.

Trooper Slater initiated a traffic stop. He described Appellant's demeanor as "very slow, sleepy" and "sluggish." *Id.* at 13. When Trooper Slater asked Appellant if he was taking medication, Appellant responded that he had taken "a lot" before starting work at 11:00 p.m. *Id.* Appellant indicated that he was prescribed methadone, oxycodone, and other medication, some of which he could not remember. *Id.*

---

[3] The video is not in the certified record. *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006) (stating, "the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty.").

Trooper Slater asked Appellant to perform the horizontal gaze nystagmus field sobriety test.[4] *Id.* at 14. Based on his observations of Appellant, Trooper Slater believed that Appellant was impaired to a degree that impeded his ability to drive safely. *Id.* Additionally, after placing Appellant under arrest, Trooper Slater observed a small cylinder on Appellant's key chain, which contained "two circular pills and one-and-a-half rectangular pills." *Id.*

Cpl. Callahan, a certified DRE, performed an evaluation of Appellant. Pertinently, while reviewing Cpl. Callahan's expert qualifications, defense counsel asked Cpl. Callahan:

> [Defense counsel]: Through that training or that process, are you given any specialized knowledge or training to understand a person's medical condition or potential injuries and how that might impact the test itself?
>
> [Cpl. Callahan]: Absolutely, sir. I had actually ruled people nonimpaired, as well as medically impaired.
>
> Q: When you say medically impair[ed], I'm saying if someone has a disease or a serious injury, are you able to diagnose that and understand [its e]ffect on the body in order – and factor that in to your analysis?
>
> A: So I do not offer a diagnosis, sir. That's for medical professionals. I offer opinions based on my past experience, my expertise and my current experience as a DRE.

_____

[4] Trooper Slater testified he did not ask Appellant to perform the walk-and-turn and one-leg stand tests because Appellant indicated he had a gunshot wound in his foot. N.T. (Volume I), 1/20/23, at 20-21.

*Id.* at 31. Defense counsel did not object to Cpl. Callahan's qualifications, but suggested the weight of his opinion might be affected by his training. *Id.*

Cpl. Callahan testified that the drug influence classification program comprises 12 steps and can be used to determine whether someone is under the influence of one or more of seven drug categories. *Id.* at 29-30. Appellant's preliminary breath test indicated a blood alcohol content of 0.00 percent.[5] *Id.* at 35. Cpl. Callahan described Appellant's eyes as bloodshot, and noted Appellant's droopy eyelids. *Id.* Appellant told Cpl. Callahan that he had slept about 45 minutes the night before. *Id.* at 36. Regarding his medications, Appellant explained he was taking hydroxyurea, promethazine, oxycodone, naproxen, and methadone. *Id.* at 37.

Cpl. Callahan detailed each step of his evaluation and reviewed his observations of each test. *See id.* at 38-43. Cpl. Callahan concluded:

> [Appellant] was under the influence of both [central nervous system (CNS)] depressants and a narcotic analgesic. I arrived at this opinion for the CNS depressants due to [Appellant] displaying general indicators of the drowsiness, depressed reflexes, drunk-like behavior. He had gait ataxia. He was unsteady on his feet and overall uncoordinated. I arrived at my opinion for the narcotic analgesic, and I base this off of [Appellant's] constricted pupils in room light and near total darkness, classifying his reaction to light as being little to none visible. Again, ptosis or droopy eyelids, depressed reflexes, drowsiness, as well as a dry mouth, and his admission to utilizing a narcotic analgesic, namely the oxycodone and the methadone.

---

[5] Immediately after administering the preliminary breath test, Cpl. Callahan advised Appellant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 435 (1966). N.T. (Volume I), 1/20/23, at 44.

*Id.* at 45; *see also id.* (noting drowsiness, droopy eyelids, slow reactions, low raspy speech, and unsteadiness). Consequently, Cpl. Callahan opined that Appellant was impaired to the extent of being unable to safely drive a motor vehicle. *Id.* at 46.

At trial, Appellant testified in his defense. He stated he had been diagnosed with Sickle Cell Anemia when he was six months old. N.T. (Volume II), 1/20/23, at 10. Appellant explained that the disease causes pain, drowsiness, dehydration, and jaundiced eyes. *Id.* at 12. According to Appellant, he had been taking prescription methadone for at least 20 years and prescription oxycodone for about 8 years before that. *Id.* at 15. Appellant stated, "I know not to fill myself … up with a lot of medication if I'm going to be driving. I'm more responsible than that. That's why I still had medication on me [in the key chain] for my morning dose…." *Id.* at 16.

Appellant also testified that he was exhausted at the time of the vehicle stop. *Id.* at 16. Appellant attributed the swerving to his exhaustion and "the truck not being properly maintenanced [*sic*]." *Id.* at 17.

In its opinion, the trial court highlighted Appellant's admission to taking methadone and oxycodone. Trial Court Opinion, 5/31/23, at 5. The trial court viewed the mobile video recording and concluded it corroborated Trooper Slater's testimony that Appellant's driving was erratic and dangerous. *Id.*

The court also considered Appellant's refusal to submit to a blood test. *Id.*[6] Further, the court observed that the Commonwealth was not required to prove its case through expert testimony. *Id.* (citing ***Commonwealth v. Griffith***, 32 A.3d 1231, 1239 (Pa. 2011) (stating that "subsection 3802(d)(2) does not limit, constrain, or specify the type of evidence that the Commonwealth can proffer in its case.").

The trial court properly considered the evidence, including Appellant's explanation for his erratic driving. As the factfinder, the court acted within its purview in crediting the testimony of Trooper Slater and Cpl. Callahan. ***Commonwealth v. Blackham***, 909 A.2d 315, 320 (Pa. Super. 2006) ("It is not for this Court to overturn the credibility determinations of the fact-finder."). Moreover, Appellant had the opportunity to cross examine Cpl. Callahan about his expertise and testify to his personal history with Sickle Cell Anemia.

---

[6] The Vehicle Code provides:

> **(e) Refusal admissible in evidence.--**In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced into evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S.A. § 1547(e).

Upon review, we conclude the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to establish Appellant was under the influence of a drug, or combination of drugs, to a degree which impaired his ability to drive safely. ***See Hutchins***, 42 A.3d at 307. We also agree with Counsel's conclusion that Appellant's appeal is frivolous, and our independent review discloses no non-frivolous issues Appellant could raise on appeal. Accordingly, we grant Counsel's application to withdraw and affirm Appellant's judgment of sentence.

Application to withdraw granted. Judgment of sentence affirmed.

Judge Kunselman joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/4/2024